UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BURNETTE FOODS, INC.

        Plaintiff,

v.                                                                                                  Case No. 1:16-CV-21

UNITED STATES DEPARTMENT                                HON. GORDON J. QUIST
OF AGRICULTURE and THOMAS J.
VILSACK,

        Defendants.
_____/

## OPINION

Plaintiff, Burnette Foods, Inc., has sued the United States Department of Agriculture (USDA) and its Secretary, seeking review of a USDA judgment. Defendants have moved to dismiss Plaintiff's complaint, arguing that some of Plaintiff's claims are unexhausted and the remaining claims fail to state a claim for relief. The matter is fully briefed and the Court has held oral argument. For the reasons discussed below, the Court will grant Defendants' motion in part and deny the motion in part.

**I.    Background**

In enacting the Agricultural Marketing Agreement Act of 1937 (AMAA), "Congress declared a national policy of stabilizing prices for agricultural commodities." *Horne v. Dep't of Agric.*, -- U.S. --,133 S. Ct. 2053, 2056-57 (2013). The AMMA authorizes the Secretary of Agriculture to promulgate marketing orders that regulate the sale of agricultural goods and to delegate authority to administer those orders to industry committees. 7 U.S.C. § 608c(7)(C). The AMMA does not directly regulate those who grow agricultural commodities, but instead regulates

"handlers," which the statute defines as "processors, associations of producers, and others engaged in the handling" of covered agricultural commodities. *Id.* § 608c(1).

This case centers on Federal Marketing Order 930, 7 C.F.R. § 930, an order issued by the USDA that regulates tart cherries grown in Michigan, New York, Pennsylvania, Oregon, Utah, Washington, and Wisconsin (the Tart Cherry Order). (ECF No. 1 at Page ID.1.) To administer the Tart Cherry Order, a "Cherry Industry Administrative Board" (CIAB) is created. Subject to certain qualifications and exceptions, in order to achieve balanced representation on the Board, and to prevent any single sales constituency from gaining control of the Board, the membership of the Board cannot be from or affiliated with a single "sales constituency." 7 C.F.R. § 930.20. A sales constituency is "a common marketing organization or brokerage firm or individual representing a group of handlers and growers, "but [a]n organization which receives consignments of cherries and does not direct where the consigned cherries are sold is not a sales constituency." 7 C.F.R. § 930.16.

The Tart Cherry Order directs the CIAB to determine the "optimum supply level" for tart cherries each crop year. *Id.* § 930.50(a). If the tart cherry inventory is expected to be higher than the optimum supply volume, the CIAB requires that tart cherry handlers withhold some of their product from the market. (ECF No. 1 at Page ID.5.) Depending on the restrictions in a given year, handlers may be prevented from selling product and forced to put product into reserve to be sold in later years. (*Id.*)

Plaintiff is a Michigan food processor that produces canned fruits and vegetables, including tart cherries. (*Id.* at Page ID.4.) Plaintiff is a tart cherry handler as defined by the Tart Cherry Order, and thus subject to the restrictions imposed by the CIAB. (*Id.* at Page ID.5.) Unlike most tart cherry handlers, which process cherries into frozen products, Plaintiff processes cherries into canned products. (*Id.*) Canned cherries have a shorter shelf life than frozen cherries. (*Id.*) Plaintiff

2

currently has about $3 million worth of inventory that it cannot sell because of the Tart Cherry Order. (*Id.*)

In 2011, Plaintiff filed a petition with the USDA requesting modification of, and exemption from, the Tart Cherry Order. (*Id.* at Page ID.3-4.) Plaintiff asserted that the formula for determining the optimum supply level is arbitrary and capricious because it does not account for the volume of imported cherries. (*Id.* at Page ID.6.) Plaintiff further asserted that the CIAB is improperly constituted because it contains too many members who are part of CherrCo, a cooperative whose members produce primarily frozen cherries. (*Id.* at Page ID.6-7.) Plaintiff also asserted that the canned segment of the cherry industry should be exempt from the Tart Cherry Order due to the limited shelf life of its products. (*Id.* at Page ID.8.)

In May 2012, Administrative Law Judge Jill S. Clifton held a six-day hearing on Plaintiff's petition. (*Id.* at Page ID.4.) The ALJ subsequently issued an opinion granting in part and denying in part Plaintiff's petition. (*Id.*) Both parties appealed. (*Id.*) On June 19, 2015, Judicial Officer William Jensen issued an opinion denying Plaintiff's appeal and granting the USDA's appeal. (*Id.*) The Judicial Officer subsequently denied Plaintiff's motion for reconsideration. (*Id.*) Plaintiff then filed a complaint in this Court seeking review of the agency's decision pursuant to 7 U.S.C. § 608c(15)(B).

**II.     Standard of Review**

Any handler subject to an order promulgated pursuant to the AMMA may file a written petition challenging the order with the USDA. 7 U.S.C. § 608c(15)(A). District courts have jurisdiction to review the rulings of the USDA. 7 U.S.C. § 608c(15)(B). A court's review "is limited to whether the decision is in accordance with law and whether the decision is supported by substantial evidence." *Defiance Milk Prods. Co. v. Lyng*, 857 F.2d 1065, 1068 (6th Cir. 1988).

Federal courts "sit in judgment of a regulation's lawfulness, not its economic efficiency." *Id.* at 1071.

In deciding a Rule 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations [of the plaintiff] as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Z *Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 597 (6th Cir. 2014) (internal quotation marks omitted). The purpose of a Rule 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Campbell v. Nationstar Mort.*, 611 F. App'x 288, 291 (6th Cir. 2015) (internal quotation marks omitted).

**III.   Discussion**

*Count I*

Count I attacks the Judicial Officer's conclusion that it was lawful to subject the canned segment of the tart cherry industry to the sales restrictions in the Tart Cherry Order. In coming to that conclusion, the Judicial Officer reversed the ALJ's decision that subjecting the canned segment of the industry to volume restrictions was "confiscatory." The Judicial Officer said that if the Tart Cherry Order failed to produce equitable results, "the remedy is through an amendatory or termination proceeding—not through a proceeding conducted pursuant to 7 U.S.C. § 608c(15)(A)." (ECF No. 1-3 at Page ID.74.) Plaintiff asserts that the Judicial Officer's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In particular, Plaintiff cites the Supreme Court's takings jurisprudence.[1]

---

[1] Plaintiff asserts that the ALJ's conclusion that the Tart Cherry Order was confiscatory was consistent with Supreme Court takings jurisprudence and that the Judicial Officer thus erred in reversing the ALJ's decision. As Plaintiff acknowledges, the ALJ's use of the term confiscatory refers to an unconstitutional taking. Thus, the Court construes Count I as a claim that the Judicial Officer's decision was not in accordance with law because the volume restrictions amount to an unconstitutional taking.

4

The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., amend. 5.  A taking may assume one of two forms: a physical taking or a regulatory taking.  *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010). The classic physical taking occurs when "the government directly appropriates private property for its own use." *Horne v. Dep't of Agric.*, -- U.S. --,135 S. Ct. 2419, 2425 (2015) (internal quotation marks omitted). A regulatory taking generally occurs when a governmental enactment leaves a property owner with "no productive or economically beneficial use" of his property.  *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1017, 112 S. Ct. 2886, 2894 (1992).

In *Horne*, the Court addressed an order promulgated under the AMMA that required raisin growers to give a portion of their crop to the Government free of charge. *Horne*,135 S. Ct. at 2424. Under that order, the Government acquired title to the raisins and the growers retained an interest in any proceeds from the potential sale of the raisins. *Id.*  The Court held that the scheme amounted to a "clear physical taking" because  title to the raisins, as well as the raisins themselves, passed to the Government. *Id.* at 2428.  The Court explained:

> Raisin growers subject to the reserve requirement thus lose the entire bundle of property rights in the appropriated raisins—the rights to possess, use and dispose of them—with the exception of the speculative hope that some residual proceeds may be left when the Government is done with the raisins and has deducted the expenses of implementing all aspects of the marketing order. The Government's actual taking of possession and control of the reserve raisins gives rise to a taking as clearly as if the Government held full title and ownership, as it essentially does. The Government's formal demand that the [plaintiffs] turn over a percentage of their raisin crop without charge, for the Government's control and use, is of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine.

*Id.* at 2428 (internal quotation marks and citations omitted).

In this case, Plaintiff has not alleged that the Government ever took title or possession of Plaintiff's cherries.  Rather, Plaintiff retained possession of the cherries, but had to maintain the inventory as "unsalable." (ECF No. 1 at Page ID.5.)  Thus, the facts differ from those in *Horne*, and

5

*Horne* provides no support for Plaintiff's argument that the restrictions in the Tart Cherry Order amount to a physical taking. Plaintiff has failed to point to any other case supporting its position that it was subject to a physical taking, and the Court can find none.

Neither the complaint nor Plaintiff's response to Defendants' motion included the term "regulatory taking" or citations to case law addressing regulatory takings. Nevertheless, Plaintiff stated at oral argument that it is indeed pursuing a claim under the regulatory takings doctrine. Because Plaintiff has failed to develop this argument, the Court deems it waived. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks omitted). Moreover, this argument would fail even if properly developed because Plaintiff's complaint makes clear that it is free to sell some portion of its product every year. (*See* ECF No. 1 at Page ID.5 (noting that it has been required to place in reserve 12% to 68% of its product each year).) Thus, Plaintiff was not "denie[d] all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015, 112 S. Ct at 2893.

The Court concludes that the Judicial Officer's opinion that the Tart Cherry Order was not "confiscatory," or did not constitute an unconstitutional taking, was in accordance with law. Accordingly, the Court will dismiss Count I.

*Count II*

In Count II, Plaintiff seeks a declaratory judgment that the Tart Cherry Order is unconstitutional because it does not take imported cherries into account in determining the optimum supply. Plaintiff asserts that the Judicial Officer's decision that imported cherries need not be included in the supply formula is "in error because [it is] contrary to constitutional right, power,

privilege, or immunity." (ECF No. 1 at Page ID.11.) Contrary to Plaintiff's argument, the allegations in Count II are insufficient to provide notice of Plaintiff's claim. Neither Plaintiff's complaint nor its brief in response to Defendants' motion identify a specific constitutional right being violated. Therefore Count II will be dismissed. *See Deters v. Kentucky Bar Ass'n*, 130 F. Supp. 3d 1038, 1052-53 (E.D. Ky. 2015) ("With no indication of what constitutional protection this rule supposedly violates, nor any legal argument to support his request that the rule be declared unconstitutional, the claim will be dismissed for failure to state a claim upon which relief may be granted.").

*Count III*

In Count III, Plaintiff asserts that the composition of the CIAB violates both the Tart Cherry Order and the Constitution. Defendant argues that the constitutional portion of this claim was not exhausted, and that the exhausted portion of this claim fails as a matter of law.

"[A]ny handler subject to a marketing order must raise any challenges to the order, including constitutional challenges, in administrative proceedings." *Horne*, 133 S. Ct. at 2063 (internal quotation marks omitted). The AMMA exhaustion requirement is mandatory, and courts have refused to excuse failure to exhaust. *Hettinga v. United States*, 560 F.3d 498, 505 (D.C. Cir. 2009). Thus, because Plaintiff never argued before the agency that the composition of the CIAB was unconstitutional, Plaintiff cannot pursue that constitutional argument before this Court.

Plaintiff did, however, argue before the agency that the composition of the CIAB violated the Tart Cherry Order. Plaintiff now argues that the ALJ's and Judicial Officer's decisions rejecting this claim were not supported by substantial evidence, were not in accordance with law, and were arbitrary and capricious. Defendants respond that the "Judicial Officer cited a wealth of evidence in the administrative record in reaching a conclusion that fully accords with the text and regulatory history of the Order." (ECF No. 14 at Page ID.313.)

The dispute is focused on whether CherrCo, whose members hold multiple seats on the CIAB, is a "sales constituency." In affirming the ALJ on this point, the Judicial Officer cited evidence from the administrative record in determining that CherrCo does not constitute a sales constituency because "CherrCo., Inc. does not direct where the consigned tart cherries are sold." (ECF No. 1-3 at Page ID.68.) Without the entire administrative record, however, the Court cannot determine whether evidence was presented that undermines the Judicial Officer's decision. In other words, without the entire record, the Court cannot say whether the Judicial Officer's decision was supported by "substantial evidence" in the record. Accordingly, Plaintiff may proceed with its claim that the composition of the CIAB violates the Tart Cherry Order

*Count IV*

Count IV states that the Tart Cherry Order is unconstitutional because it does not apply to all states. In particular, Plaintiff asserts that the Order violates the equal protection and due process clauses of the Fifth Amendment. Defendants argue that this claim should be dismissed because it was not presented to the agency. Plaintiff responds that, while it never mentioned the term "equal protection" before the agency, its petition to the agency "clearly implicated" the Fifth Amendment because it stated that handlers from unregulated states obtained an "unfair competitive advantage." (ECF No. 17 at Page ID.469.) Neither the ALJ nor the Judicial Officer interpreted Plaintiff's allegation of unfairness as an equal protection claim—nor should they have. Not everything that is "unfair" implicates a constitutional right. Accordingly, because the claim in Count IV was not exhausted, it will be dismissed.

*Count V*

In Count V, Plaintiff asserts that restrictions on the sale of canned tart cherries constitute an unconstitutional taking. For the reasons stated in the discussion of Count I, the Court will dismiss this claim.

**IV.     Conclusion**

For the reasons previously stated, the Court will allow Count III to proceed insofar as it alleges that the CIAB violates the Tart Cherry Order. The constitutional claim in Count III, as well as the remainder of Plaintiff's claims, will be dismissed.

A separate order will issue.

Dated:  September 9, 2016              /s/ Gordon J. Quist
                                       GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE