UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURNETTE FOODS, INC.,

    Plaintiff,

v.                                                                 Case No. 1:16-CV-21

U.S. DEPARTMENT OF AGRICULTURE          HON. GORDON J. QUIST
and SONNY PERDUE, Secretary of
Agriculture

    Defendants.
_____/

## OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Each party has moved for summary judgment. Count III of Burnette's Complaint alleges that the composition of the Cherry Industry Administrative Board (CIAB) violates the Tart Cherry Order. Count III is Burnette's sole remaining count. (ECF No. 23.)

The issue of whether the CIAB violates the Tart Cherry Order turns on whether CherrCo, Inc. is a "sales constituency" under the Tart Cherry Order. A sales constituency is a "common marketing organization or brokerage firm or individual representing a group of handlers and growers. An organization *which receives consignments of cherries and does not direct where the consigned cherries are sold is not a sales constituency*." 7 C.F.R. § 930.16 (emphasis added). In order to take into consideration various points of view in the tart cherry business, a single sales constituency cannot have more than one board member on the CIAB. 7 C.F.R. § 930.20(g). When Burnette filed its original petition in 2011, 14 of the 18 CIAB board members were CherrCo members; all nine of the representatives from Michigan on the CIAB were CherrCo members. (ECF No. 30-4 at PageID.2528.) A Judicial Officer found that CherrCo is *not* a sales constituency because it receives consignments of cherries from others and does not direct where the consigned

cherries are sold. (ECF No. 30-3 at PageID.1411–34.) Both parties request summary judgment; Burnette asserts that the Judicial Officer's determination is not supported by substantial evidence. USDA asserts that the record supports the Judicial Officer's findings that CherrCo is a consignee of tart cherries which does not direct where cherries are sold.

Upon consideration of the parties' briefs and the entire record, the Court will grant Burnette's motion to reverse the Judicial Officer's decision and deny USDA's cross-motion.

## I. Standard of Review

"[R]eview of the [agency's] decision is limited to whether the decision is in accordance with law and whether the decision is supported by substantial evidence." *Defiance Milk Prods. Co. v. Lyng*, 857 F.2d 1065, 1068 (6th Cir. 1988). "The [agency's] decision . . . must be upheld if the record contains 'such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion.'" *Lehigh Valley Farmers v. Block*, 829 F.2d 409, 412 (3d Cir. 1987) (first alteration added, second alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 197, 217 (1938)); *see also Defiance Milk Prods.*, 857 F.2d at 1068 (citing *Lehigh Valley*).

## II. Discussion

Despite the deference owed to the Judicial Officer's decision, the Court finds that the Judicial Officer's decision is not supported by substantial evidence.

The Judicial Officer, who affirmed an earlier decision by an administrative law judge on this issue, determined that CherrCo is not a sales constituency as defined in 7 C.F.R. § 930.16 because it receives consignments of cherries *and* does not direct where consigned tart cherries are sold. (ECF No. 1-3 at PageID.68.) The Judicial Officer made the following findings:

- CherrCo's member-cooperatives select their own sales agents.

- The sales agents agree to follow CherrCo's terms to ensure that all tart cherries sold by CherrCo's member-cooperatives meet CherrCo's minimum conditions for the sale.

- When a sales agent makes a sale, the agent notifies CherrCo of the buyer's identity, the quantity of tart cherries purchased, the price, and other terms of the sale.

- CherrCo authorizes the release of pooled cherries for sale if the sale meets CherrCo's minimum criteria for price and other terms.

- Each member-cooperative directs where its tart cherries are sold.

- CherrCo is not a sales constituency because, although it does receive consigned cherries, it does not direct where they are sold.

*Id.*

Burnette alleges that the Judicial Officer's conclusions are not supported by substantial evidence and relied only on the testimony of James Jensen, the President of CherrCo. (ECF No. 33 at PageID.6575.) However, the Judicial Officer was not required to specifically cite all supporting record evidence in his opinion, as long as the decision is supported by substantial evidence in the record. *See, e.g.*, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1355–56 (6th Cir. 1994). So, with that standard in mind, there are two issues:

1. **Whether the Record Supports the Conclusion that CherrCo Is an Organization Which Receives Consignments of Cherries:**

The Judicial Officer determined that CherrCo is an organization which receives consignments of cherries from its members. (ECF No. 1-3 at PageID.68.) Burnette disagrees and argues that CherrCo owns the inventories of tart cherries, acts beyond consignee activities, and does not have a consignment relationship with its members. (ECF No. 33 at PageID.6577–82.)

Whether CherrCo is a consignee is important because organizations that receive consignment of cherries and do not direct where they are sold are explicitly exempted from the

definition of "sales constituency" under the Tart Cherry Order. 7 C.F.R. § 930.16. If CherrCo is a consignee and does not direct where the cherries are sold, then it is not a sales constituency and the CIAB can have more than one member of CherrCo. To consign a good, the consignor "transfer[s the good] to another's custody or charge" or "give[s the good] to another to sell, usually with the understanding that the seller will pay the owner for the good[] from the proceeds." CONSIGN, *Black's Law Dictionary* (10th ed. 2014). "[T]itle does not pass until there is action of consignee indicating sale." CONSIGN, *Black's Law Dictionary* (6th ed. 1990).

Burnette argues that CherrCo owns the inventories of tart cherries and, accordingly, cannot be a consignee. Burnette relies on the testimony of one witness stating that CherrCo owns the inventory and the fact that CherrCo's invoices make no mention of individual members. (ECF No. 30-4 at PageID.2865; ECF No. 30-7 at PageID.3518.) USDA, in its response and cross-motion, cites a number of contradictory testimonies and other pieces of evidence from the administrative record to demonstrate that CherrCo acts as a consignee and receives consignment of cherries from its members and, rather than owning the inventory, simply retains custody on behalf of its members. (ECF No. 38 at PageID.6631–33.) In light of this evidence, a sales invoice itself is not dispositive of ownership of the inventory. The record evidence demonstrates that the members transfer their cherries to CherrCo's custody for CherrCo to sell; even when the cherry inventory is pooled, the respective members retain title over their fungible portion of the cherries until CherrCo indicates a sale. The members retain the risk that their portion of the cherries will not be sold.

Burnette argues that because the Judicial Officer acknowledged that CherrCo's activities "go well beyond those of a mere consignee," CherrCo cannot be a consignee. (ECF No. 30-3 at PageID.1498.) Burnette asserts that this conclusion and "evidence at the May 2012 Hearing shows that CherrCo is not an organization that receives consignments of cherries because the evidence

4

shows that its activities go well beyond a mere consignor of cherries." (ECF No. 33 at PageID.6579.) This argument fails, particularly when considered in light of the other record evidence discussed and cited by USDA in its briefs. The fact that CherrCo provides many services to its members does not nullify its role as a consignee. Consignees often promote the sale of consignee products. Burnette fails to show how CherrCo and its members' relationship does not fit the definition of consignment.

There is substantial evidence in the record supporting the Judicial Officer's determination that CherrCo receives consignments of cherries from its members, and Burnette's arguments are unpersuasive and are unsupported.

**2. Whether CherrCo Directs Where Tart Cherries are Sold:**

Burnette argues that "the Judicial Officer completely ignored additional activities of CherrCo which are clearly sales activities . . . [and] misinterpreted the relationship between CherrCo and the sales representatives." (ECF No. 33 at PageID.6582.) Burnette asserts that "overwhelming" evidence shows that the sales agents represent CherrCo, rather than the individual CherrCo members, and dismisses the argument that the arrangement between CherrCo and the sales agents is a licensing arrangement. (ECF No. 33 at PageID.6582–83.) Burnette points out, for example, that CherrCo sets minimum prices for products, is listed as the seller in all orders, provides marketing tools and literature to the sales agents, has contractual relationships with the sales agents, and acts as the "exclusive" marketing agent for CherrCo members. (ECF No. 33 at PageID.6584–85.)

The Judicial Officer relied on the fact that member-cooperatives select their own sales agents and the fact that the member-cooperative requests release of pooled cherries for sale. But the Judicial Officer also acknowledged that sales are subject to the authorization of CherrCo. (ECF

No. 30-3 at PageID.1421–22.) The record evidences that CherrCo directs where consigned cherries are sold. As Jensen testified and under the Membership and Marketing Agreement,

- Individual member co-ops do not sign the agreements with the sales representatives. (ECF No. 30-4 at PageID.2077.)

- *CherrCo,* itself, pays commissions directly to sales agents. (*Id.* at PageID.2078.)

- CherrCo's marketing committee composed of several CIAB members determines the sales agents' commissions. (*Id.* at PageID.2079.)

- Although the individual members choose who their sales agents are, CherrCo acts as the exclusive marketing agent. (*Id.* at PageID.2081.)[1]

- Under the Membership and Marketing Agreement, CherrCo is equipped with the authority to sell cherries itself—"Co-op may sell the Product itself or may license sales agents to sell the product." (ECF No. 30-4 at PageID.2084; ECF No. 30-6 at PageID.3348.)

- Whether CherrCo sells cherries itself or licenses sales agents to do so is determined by CherrCo's Board of Directors. (ECF No. 30-4 at PageID.2084.)

- CherrCo Members transfer cherries as CherrCo directs—"Member shall transfer the Product to Co-op, customers of Co-op, or agents of Co-op, as Co-op shall direct." (*Id.* at PageID.2086; ECF No. 30-6 at PageID.3349.)

- CherrCo "is engaged in the processing, preparing for market, marketing, handling, packing, storing, drying, manufacturing, and selling of tart cherries." (ECF No. 30-6 at PageID.3347.)

---

[1] The Court could not find how many sales representatives CherrCo had. But if not every member of CherrCo had its own sales representative, then the obvious question would be, who was selling the cherries for those who did not have a sales representative.

- CherrCo also must approve all orders, and can "reject any order or any part thereof for any reason," and is listed as the seller for all orders. (ECF No. 30-10 at PageID.3822.)
- CherrCo is listed as the seller for all orders. (*Id.*)

This is substantial evidence that CherrCo "directs where the consigned cherries are sold" and therefore qualifies as a sales constituency under 7 C.F.R. § 930.16. The Judicial Officer's conclusion was not supported by substantial evidence. Therefore, CherrCo, as a sales constituency, cannot have more than one seat on the CIAB. 7 C.F.R. § 930.20.

## Burnette's Remaining Arguments

In its reply and response to USDA's cross-motion, Burnette argues that the Tart Cherry Order has not improved the economic welfare of growers, and that CherrCo inappropriately dominates the CIAB. These assertions are beyond the scope of Burnette's remaining claim, *i.e.*, that CherrCo is a sales constituency. Therefore, they need not be addressed.

## III. Conclusion

Burnette has demonstrated that the Judicial Officer's decision was not supported by substantial evidence in the record. Burnette's motion for summary judgment will be granted, and USDA's cross-motion for summary judgment will be denied.

A separate order will issue.


Dated: January 24, 2018            /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE